Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| ESPACIO RESIDENTIAL, LLC<br>Apelada<br><br><br>*v.*<br><br><br>INVERSIONES COLIMARC, INC.;<br>ESTADOS UNIDOS DE AMÉRICA<br>Demandados<br><br><br>INVERSIONES COLIMARC, INC.<br>Apelante | KLAN202500191 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Río Grande en Fajardo<br><br>Caso Núm. N3CI201200444<br><br>Sobre:<br>Acción *In Rem* ejecución de hipoteca por la vía ordinaria |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de agosto de 2025.

Comparece Inversiones Colimarc, Inc. (Colimarc o parte apelante), solicitando que revoquemos la *Resolución, Determinaciones de Hechos, Conclusiones y Sentencia Sumaria* emitida el 12 de diciembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Río Grande en Fajardo (TPI). Mediante dicha determinación, el TPI dictó Sentencia Sumaria declarando *Con Lugar* la *Demanda Enmendada* en ejecución de hipoteca, por lo que ordenó a la parte apelante a pagar a Espacio Residential, LLC. (Espacio o parte apelada) ciertas sumas de dinero alegadamente adeudadas.

Por los fundamentos que expondremos a continuación, *Revocamos.*

## I. Resumen del tracto procesal

El caso de epígrafe comenzó el 26 de junio de 2012, cuando Doral Bank presentó una *Demanda* de cobro de dinero y ejecución de hipoteca en

NÚMERO IDENTIFICADOR

SEN2025_____

contra de Iván Rafael Sotomayor Cerra, también conocido como Iván Rafael Sotomayor Serra, y María Teresa Velilla Sotomayor, también conocida como María Teresa Vilella Sotomayor, (matrimonio Sotomayor-Velilla) y la Sociedad Legal de Bienes Gananciales compuesta por ambos. Alegó que los demandados incumplieron con los términos de un préstamo garantizado por pagaré hipotecario, otorgado el 30 de junio de 2005, sobre una propiedad ubicada en el municipio de Río Grande, descrita en el Registro de la Propiedad de la siguiente manera:

> "---**URBANA:** Apartment number seven hundred three (703) Residential apartment in the first level of building [ ] number seven (7) of Project Yunque Mar, Mameyes Ward, States Road number nine hundred sixty-eight (968), kilometer one point eight (1.8) Municipality of R[í]o Grande, Puerto Rico. The apartment is irregular in shape with a total construction area of seven hundred ninety-eight point seventy-five (798.75) square feet, equivalent to seventy-four point twenty-one (74.21) square meters. Their boundaries are as follows: by the NORTH, with a total distance of forty-two feet six inches (42'6") with apartment seven hundred five (705); by the SOUTH, with a total distance of forty-two feet six inches (42'6") with apartment seven hundred one (701) and main entrance: by EAST, with a total distance of  twenty-one feet zero inches (21'0") with communal patio and main entrance; by the WEST, with a total distance of  twenty-one feet zero inches (21'0") with communal patio. This apartment includes one (1) bedroom, one (1) family room, kitchen, laundry area, one (1) bathroom, a balcony area and living dining area. The kitchen is equipped with a sink range and [c]abinets, and the laundry includes the water heater and a sink. The main entrance of the apartment faces to the East, which gives access to the exterior. The participation of this common is point zero zero eight four one percent (0.00841%). Le corresponde estacionamiento marcado con el número setecientos tres (703)".-------------------------------------
>
> ---Consta inscrito al folio setenta (70) del tomo trescientos cuarenta y nueve (349) de Río Grande, finca número veintiún mil seiscientos sesenta y dos (21,662), inscripción primera del Registro de la Propiedad de Carolina, Sección Tercera.[1]----------

Doral Bank arguyó en la *Demanda* interpuesta, que el matrimonio Sotomayor-Velilla le adeudaba la suma de las siguientes cantidades de dinero: 1) $224,800.32 de principal; 2) 5.95% de intereses; 3) $955.75 de gastos por mora; 4) $20.00 de otros gastos; y costas, gastos y honorarios de abogados pactados en 10% del principal del pagaré. Solicitó al TPI que

---

[1] Apéndice del *recurso* de *apelación*, págs. 2, 8, 83, 86 y 89.

condenara a los demandados al pago de la alegada deuda, más los intereses que se acumulasen hasta su pago total. También solicitó que ordenara la ejecución y venta en pública subasta de la referida propiedad.

Posteriormente, el 31 de octubre de 2012, Doral Bank presentó una *Demanda Enmendada*. En ella, incluyó como parte demandada a Inversiones Colimarc, Inc., quien adquirió la propiedad en cuestión del matrimonio Sotomayor-Velilla mediante permuta el 24 de marzo de 2006, y a los Estados Unidos de América para que quedase notificado del proceso de ejecución de hipoteca. Asimismo, solicitó desistir de la acción de cobro de dinero contra el matrimonio Sotomayor-Velilla, y continuar con la acción *In Rem*.

El 9 de enero de 2013, el TPI emitió una *Sentencia Parcial* sobre el desistimiento sin perjuicio de la causa de acción de cobro de dinero en contra del matrimonio Sotomayor-Velilla.

Luego de varias incidencias procesales, el 16 de octubre de 2013, Doral Bank presentó una *Segunda Demanda Enmendada*, mediante la cual aclaró que su reclamación era estrictamente contra la propiedad.

A partir de lo anterior, el caso estuvo paralizado por un tiempo prolongado, pues el matrimonio Sotomayor-Velilla comenzó un proceso de Quiebras. No obstante, el 18 de marzo de 2016, se reanudaron los procedimientos, y el 26 de abril de 2017, el foro de instancia dictó *Sentencia* en rebeldía contra Colimarc.

Entonces, a partir del 17 de mayo de 2017, hasta el 22 de julio de 2019, hubo una serie de incidentes procesales, los cuales consistían en la presentación de varias mociones informativas, mociones de reconsideración, solicitudes de prórrogas o extensiones de término por parte de Colimarc, para contratar y presentar ante el TPI su representación legal.

Así las cosas, el 9 de diciembre de 2019, se celebró una *Vista de Discusión de Mociones y del Diagrama Longitudinal*. Comparecieron a la

mencionada vista Doral Bank, quienes eran los demandantes en aquel momento, y los demandados, Colimarc, acompañado de su representación legal, y el matrimonio Sotomayor-Velilla. Además, el TPI autorizó la sustitución de la parte demandante por Roosevelt Cayman Asset Company, así como ordenó levantar la anotación de rebeldía de Colimarc.

Igualmente, el foro recurrido desestimó con perjuicio la acción instada contra el matrimonio Sotomayor-Velilla, determinando que la sustitución de parte era inoficiosa contra Colimarc porque no estaba bajo la jurisdicción de la Ley de Quiebras, y le concedió treinta (30) días a la parte apelante para que contestase la *Demanda Enmendada.*

El 18 de diciembre de 2019, la licenciada Gwendolin Moyer Alma, quien era la abogada de Colimarc, presentó una *Moción Anunciando Renuncia de Representación Legal* de Colimarc. El 22 de enero de 2021, el licenciado Carlos G. García Miranda asumió la representación legal del apelante.

Durante los meses de diciembre de 2019, febrero de 2020, enero, marzo, y mayo de 2021, la parte apelante radicó una serie de mociones dirigidas a solicitar prórroga para contestar la demanda. El 3 de mayo de 2021, el TPI emitió una *Orden* a través de la cual le concedió a Colimarc un término final de diez (10) días para contestar la demanda, so pena de anotarle la rebeldía.

Posteriormente, el 23 de noviembre de 2021, el foro de instancia emitió una *Resolución,* en la cual dispuso que perdió jurisdicción para emitir cualquier otra orden, pues el Sr. Iván Sotomayor Serra informó que se había acogido a la protección de la Ley de Quiebras. El 1 de diciembre de 2021, la apelante solicitó la desestimación de la *Demanda Enmendada.* En vista de ello, el 3 de diciembre de 2021, el foro de instancia le concedió veinte (20) días a la parte demandante para que presentara su postura. Posteriormente, el 28 de diciembre de 2021, la parte demandante presentó

una *Moción Solicitando Reconsideración de Orden de Paralización por los Procesos de Quiebra.*

Así las cosas, el 27 de abril de 2022, la demandante radicó una *Moción Asumiendo Representación Legal* [...], a través de la cual resaltó la paralización del caso desde noviembre de 2021 y solicitó un término de 45 días para presentar una moción de sustitución de parte. El 6 de mayo de 2022, el TPI concedió el referido término. El 23 de junio de 2022, la parte demandante presentó una *Moción en Unión a Representación Legal y Solicitando Sustitución de Parte Demandante en Cumplimiento con la Orden del 6 de mayo de 2022.* El 27 de junio de 2022, el TPI emitió una *Orden* mediante la que autorizó la sustitución de la parte demandante, para que constara Espacio Residential, LLC como tal, pues era esta la alegada portadora del Pagaré Hipotecario. El 18 de julio de 2022, la apelante solicitó reconsideración. El 19 de julio de 2022, el foro recurrido le concedió un término de veinte (20) días a la nueva demandante, Espacio, para expresarse. El 11 de agosto de 2022, la apelada cumplió con la orden del TPI y acompañó su moción con una copia del Pagaré Hipotecario alegadamente endosado por esta.

El 18 de octubre de 2022, el foro de instancia ordenó el archivo del caso sin perjuicio para propósitos de estadísticas, por el procedimiento de Quiebras. Para junio de 2023, se reanudaron de los procedimientos en el caso de epígrafe. Luego de varios incidentes procesales adicionales que no son pertinentes discutir, el 3 de mayo de 2024, la parte apelante contestó la demanda, en virtud de una *Orden* dictada por el TPI, a través de la cual le concedió a Colimarc, nuevamente, un término de diez (10) días para contestar la demanda, so pena de anotarle la rebeldía.

El 15 de julio de 2024, la apelada presentó una *Moción de Sentencia Sumaria* en contra de la parte apelante en ejecución de hipoteca. En síntesis, argumentó que no existían hechos materiales en controversia, por lo que procedía dictar sentencia sumaria. Adujo, además, que el

matrimonio Sotomayor-Velilla incumplió con su obligación contractual al haber dejado de pagar el Pagaré Hipotecario. Por lo que, alegó que tenía derecho a su cobro por la vía judicial mediante el caso de epígrafe sobre la propiedad, la cual ahora pertenecía a Colimarc. Las sumas reclamadas, alegadamente adeudadas, en la moción de sentencia sumaria fueron las siguientes: 1) la suma principal de $224,800.32; 2) $177,739.21 por concepto de intereses; 3) $7,895.00 de cargos por mora; 4) $40,520.90 de adelantos recobrables realizados conforme a los términos y condiciones del Pagaré y la Escritura de Hipoteca; 5) $23,362.02 por conceptos de adelantos a la cuenta de reserva; 6) otros gastos; y 7) la suma pactada de $24,500.00 por concepto de costas, gastos y honorarios de abogado.

El 30 de julio de 2024, la apelante presentó una *Moción Solicitando Consideración de Sentencia Sumaria Luego de Descubrimiento de Prueba.* En resumen, adujo, entre otras cosas, que, para poder defenderse de manera adecuada de la solicitud de sentencia sumaria, necesitaba descubrir prueba. A tenor, solicitó al TPI que "*declare no ha lugar la MSS*; permita que se comience el descubrimiento de prueba; y conceda cualquier otro remedio que en derecho corresponda".[2]

A raíz de lo que la petición contenida en el párrafo que antecede, el 8 de agosto de 2024, el foro recurrido emitió una *Orden,* notificada a las partes el 21 de agosto de 2024, acogiendo la solicitud de la apelante. En lo específico, al acoger la solicitud de la parte apelante, el tribunal *a quo* dejó plasmado lo siguiente: "ENTERADO. COMO SE PIDE".[3]

No obstante, el 16 de septiembre de 2024, Espacio presentó una *Moción de Reconsideración.* Arguyó que el tribunal le concedió a Colimarc un tiempo indefinido para realizar el descubrimiento de prueba, y que, tomando en cuenta el historial procesal, procedía que se dictara sentencia sumaria.

---

[2] *Íd.,* pág. 119.
[3] *Íd.,* pág. 121.

Es así como, el 12 de diciembre de 2024, el TPI emitió el dictamen que aquí se impugna. Como adelantamos, el foro primario acogió la solicitud de reconsideración presentada por la parte apelada y emitió sentencia sumaria en favor de esta parte. En consonancia, el mismo foro ordenó a la parte apelante a pagar a la apelada las siguientes sumas de dinero: 1) la suma principal de $224,800.32; 2) $177,739.21 por concepto de intereses; 3) $7,895.00 de cargos por mora; 4) $40,520.90 de adelantos recobrables realizados conforme a los términos y condiciones del Pagaré y la Escritura de Hipoteca; 5) $23,362.02 por conceptos de adelantos a la cuenta de reserva; 6) otros gastos; y 7) la suma pactada de $24,500.00 por concepto de costas, gastos y honorarios de abogado.

En desacuerdo, el 10 de enero de 2025, la parte apelante presentó una *Moción de Reconsideración*. **Alegó que no había presentado su oposición a la moción de sentencia sumaria, pues la *Orden* emitida por el foro de instancia el 8 de agosto de 2024, detuvo la evaluación de dicha moción hasta culminado el descubrimiento de prueba, cuya fecha de finalización no había sido señalada por el TPI**.

Sin embargo, el TPI declaró *No Ha Lugar* la moción de reconsideración instada por la parte apelante.

Inconforme, la parte apelante acude ante nosotros mediante recurso de *apelación,* señalando la comisión de los siguientes errores:

ERRÓ EL TPI AL NO ESTABLECER UNA FECHA LÍMITE PARA CULMINAR EL DESCUBIRMIENTO DE PRUEBA NI PARA QUE EL APELANTE PUDIERA PRESENTAR SU POSICIÓN CON RELACIÓN A LA MSS.

ERRÓ EL TPI AL NO PERMITIRLE AL APELANTE OPONERSE A LA MSS.

ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIA CUANDO EXISTÍAN HECHOS Y PLANTEAMIENTOS DE DERECHO QUE IMPEDÍAN SE DICTARA UNA SENTENCIA SUMARIA.

ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIAMENTE ANTE LA AUSENCIA DE UNA PARTE INDISPENSABLE.

Por su parte, la apelada presentó su *Alegato en Oposición a Recurso de Apelación.* Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II. Exposición de Derecho

### A. Debido Proceso de Ley

Como es sabido, la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico establece, en lo aquí pertinente, que "[n]inguna persona será privada de su libertad o propiedad sin el debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes". Art. II, Sec. 7, Const. E.L.A., LPRA, Tomo I, ed. 2016, pág. 301. La garantía constitucional del debido proceso de ley se manifiesta en dos (2) dimensiones distintas: la sustantiva y la procesal. *Domínguez Castro et al. v. E.L.A.,* 178 DPR 1, 35 (2010); *McConnell v. Palau,* 161 DPR 734, 758 (2004). En lo que aquí concierne, la vertiente procesal del debido proceso protege el derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley. *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012); *Marrero Caratini v. Rodríguez Rodríguez,* 138 DPR 215, 220 (1995).

A tenor, nuestro Tribunal Supremo ha reconocido ciertas garantías que debe cumplir todo procedimiento adversativo, entre ellas: la concesión de una vista previa; **una notificación oportuna y adecuada**; **el derecho a ser oído**; el derecho a confrontarse con los testigos en su contra; a presentar prueba oral y escrita a su favor y, además, la presencia de un adjudicador imparcial. *Domínguez Castro et al. v. E.L.A., supra*; *McConnell v. Palau,* 161 DPR 734, 758 (2004). (Énfasis provisto). Con referencia al requisito de la notificación, particularmente, ha puntualizado que la garantía del debido proceso de ley "presupone una notificación que se caracterice como "real y efectiva, **ajustada a los preceptos estatutarios aplicables**". *Vendrell López v. AEE,* 199 DPR 352, 360 (2017), citando a *Río*

*Const. Corp. v. Mun. de Caguas*, 155 DPR 394, 412 (2001). (Énfasis provisto).

### B. La Sentencia Sumaria

El propósito de las Reglas de Procedimiento Civil es proveer a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018); *Rodríguez Méndez et al. v. Laser Eye,* 195 DPR 769, 785 (2016), *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014). La sentencia sumaria hace viable este objetivo al ser un mecanismo procesal que le permite al tribunal dictar sentencia sobre la totalidad de una reclamación, o cualquier controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaria. J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1era ed., Colombia, 2012, pág. 218*.*

Procede dictar sentencia sumaria si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica". *González Santiago v. Baxter Healthcare, supra; Roldán Flores v. M. Cuebas et al., supra*; *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015), *SLG Zapata-Rivera v. J. F. Montalvo,* 189 DPR 414, 430 (2013). A su vez se recomienda, en aquellos casos en que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

La mera existencia de "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria... cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). Se considera un hecho esencial y pertinente, aquél que puede afectar el resultado de la

reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

Por otra parte, la duda para impedir que se dicte sentencia sumaria no puede ser cualquiera, sino que debe ser de tal grado que "permita concluir que hay una controversia real y sustancial sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión, supra,* págs. 213-214.

Dicho lo anterior, es esencial reconocer que la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R.36, establece de manera específica los requisitos de forma con los que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En lo pertinente, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 137 (2015). La parte que se opone no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369, 383 (2009). Por el contrario, tiene que controvertir la prueba presentada por la parte solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía*, 168 DPR 127, 138 (2006).

Nuestro más alto foro ha manifestado que "a menos que las alegaciones contenidas en la moción de sentencia sumaria queden debidamente controvertidas, éstas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien promueve". *Meléndez González et al. v. M. Cuebas, supra,* pág. 137.

### C. Función revisora del foro apelativo con respecto a la sentencia sumaria dictada por el foro primario

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias o resolución que deniega su aplicación, nuestro Tribunal de Apelaciones se encuentra en la misma posición que el tribunal inferior para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas, supra.* Los criterios a seguir por este foro intermedio al atender la revisión de una sentencia sumaria dictada por el foro primario han sido enumerados con exactitud por nuestro Tribunal Supremo. *Íd.* A tenor, el Tribunal de Apelaciones debe:

1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras: (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia; (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas, supra.* El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos. *Íd.* en la pág. 115. También, se ha

aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

### III. Aplicación del Derecho a los hechos

Juzgamos decisivo el examen del segundo señalamiento de error, pues dispone del recurso apelativo ante nuestra consideración, de modo que nos limitaremos a su discusión. Mediante este la parte apelante afirma que incidió el TPI al no permitirle oponerse a la moción de sentencia sumaria presentada por la apelada.

A esto la parte apelada riposta en su *Alegato en Oposición a Recurso de Apelación*, que la parte apelante tuvo una amplia oportunidad para presentar su postura al permitírsele abordar la moción de reconsideración cuya adjudicación resultó en la Sentencia apelada.

En la exposición de derecho hicimos referencia a las garantías con las que debe cumplir todo procedimiento adversativo, en virtud del derecho constitucional al debido proceso de ley. Específicamente, identificamos las siguientes garantías que componen dicho derecho: la concesión de una vista previa; **una notificación oportuna y adecuada**; **el derecho a ser oído**; el derecho a confrontarse con los testigos en su contra; a presentar prueba oral y escrita a su favor y, además, la presencia de un adjudicador imparcial. *Domínguez Castro et al. v. E.L.A., supra*; *McConnell v. Palau, supra*; *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 887 (1993). (Énfasis provisto).

A partir del reconocimiento de lo anterior, se debe advertir que, el 15 de julio de 2024, a los quince días de la parte apelada instar su moción de sentencia sumaria, la parte apelante le solicitó al foro recurrido que: la declarara *No Ha Lugar* dicha moción dispositiva; **le permitiese concluir el descubrimiento de prueba, para entonces estar en posición de oponerse a la referida moción dispositiva**. Por causa de esta petición del

apelante, el tribunal *a quo* inicialmente **concedió lo solicitado**.[4] En consonancia, mediante *Resolución* de 21 de agosto de 2024, el foro primario determinó "Enterado. **Como se pide**".[5] (Énfasis provisto).

No obstante, y según lo plantea la parte apelante, la *Resolución* de 21 de agosto de 2024 resulta ambigua, pues la expresión "como se pide" no precisa sobre si se refiere a la solicitud de denegatoria de la moción de sentencia sumaria en sus méritos, o alude a la concesión de la petición para que se permitiera la conclusión del descubrimiento de prueba, como paso previo a presentar escrito en oposición a moción de sentencia sumaria. Lo que sí nos resulta claro es que, a partir de tal determinación interlocutoria del TPI, cabía pensar, como mínimo, que la parte apelante disponía de un término mayor para oponerse a la petición de sentencia sumaria instada por la parte apelada, sin que el foro pasara a resolverla en sus méritos.

No obstante, lo cierto es que el foro apelado cambió la determinación inicial aludida, en respuesta a una moción de reconsideración instada por la parte apelada, emitiendo la *Sentencia* apelada, sin haber señalado un término para que la parte apelante pudiera oponerse a la solicitud de sentencia sumaria. Es en este curso de acción que apreciamos error, al considerar el efecto que tiene en el debido proceso de ley de la parte apelante no haber contado con una oportunidad real de oponerse a la solicitud de sentencia sumaria.

No hay duda de que el proceso sumario concebido por la Regla 36 de Procedimiento Civil, *supra*, permite al foro primario disponer de una causa de acción sin la celebración de una vista en su fondo, allí donde no exista

---

[4] Debe observarse que la moción instada por la parte apelante, solicitando que se permitiera la conclusión del descubrimiento como paso previo a contestar la moción de sentencia sumaria, fue presentada de manera oportuna, antes de que venciera el plazo de veinte días para presentar oposición a sentencia sumaria dispuesto por la Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b). Según es sabido, la Regla 6.6 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.6, dispone, en lo pertinente, que cualquier solicitud de prórroga deberá presentarse antes de expirar el plazo cuya prórroga se solicita. Por tanto, el TPI estaba habilitado, como lo hizo, para conceder una prórroga al término para contestar la moción de sentencia sumaria, o disponer de alguna otra forma.

[5] Apéndice del recurso de apelación, pág. 121.

hechos en controversia, y el derecho le asista a una de las partes. Sin embargo, por imperativo del debido proceso de ley, tal ejercicio adjudicativo requiere que la parte contra la que se presenta la moción de sentencia sumaria tenga una verdadera oportunidad de oponerse a dicha petición. Contrario a esto, las incidencias procesales reseñadas en los párrafos que anteceden revelan que a la parte apelante se le tronchó el derecho a instar escrito en oposición a sentencia sumaria. En este sentido, juzgamos que el Tribunal estaba convocado a brindarle al apelante una notificación adecuada y la oportunidad efectiva de ser oído respecto a la moción de sentencia sumaria pendiente, antes de disponer de esta finalmente.

Al así determinar, no estamos ajenos a todas las incidencias procesales que precedieron la *Sentencia* apelada y han supuesto la dilación del proceso. Sin embargo, tampoco podemos eludir la importancia en jerarquía de los derechos que comporta el debido proceso de ley.

**IV. Parte dispositiva**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, *revocamos* la Sentencia apelada. En atención a lo explicado, devolvemos el asunto al Tribunal de Primera Instancia para que se le permita a la parte apelante oponerse a la moción de sentencia sumaria presentada por la parte apelada y que el Tribunal esté en posición de determinar si procede o no la sentencia sumaria.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones